

**SO ORDERED.**

**SIGNED this 04 day of May, 2009.**

_____
A. Thomas Small
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **PHILLIP RAY HARRIS** | **08-08162-8-ATS** |
| **DAWN MCCULLEN HARRIS** | |
| **DEBTORS** | |

**ORDER DENYING TRUSTEE'S MOTION TO DISMISS**

The matter before the court is the motion filed by the chapter 13 trustee, John F. Logan, to dismiss the case of Phillip Ray Harris and Dawn McCullen Harris. The trustee and the debtors agree that the issues before the court are whether the debtors' plan provides, as required by 11 U.S.C. § 1325(b)(1)(B), that all of the debtors' projected disposable income to be received in the applicable commitment period is being applied to make payments to unsecured creditors, and whether, as required by 11 U.S.C. § 1325(a)(3), the debtors' plan is proposed in good faith. A hearing was held in Raleigh, North Carolina on April 7, 2009. This motion was heard at the same time as a similar motion in the case of In re Stallings, Case No. 08-08973-8-ATS. The analysis and result in the two cases are essentially the same.

Phillip Ray Harris and Dawn McCullen Harris filed a joint petition for relief under chapter 13 of the Bankruptcy Code on November 18, 2008, and proposed a plan that pays no dividend to

unsecured creditors. The trustee argues that the debtors' plan cannot be confirmed, because the debtors have monthly disposable income of $176.97 that is not being paid to unsecured creditors through the plan as is required by § 1325(b). The debtors maintain that they have no disposable income and that their monthly disposable income in fact is a negative $312.03. If the trustee's disposable income computation is correct, the debtors' plan must provide payment to unsecured creditors of at least $10,618.20, but if the debtors' calculation is accurate, they are not required to pay anything to unsecured creditors.

> 11 U.S.C. § 1325(b)(1) provides that
>
> [i]f the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to the unsecured creditors under the plan.

The parties agree that based on the amount of the debtors' current monthly income of $7,824.17, the applicable commitment period for which the plan must apply the debtors' disposable income to unsecured creditors is five years. It is also agreed that the debtors' disposable income shall be determined by reducing the debtors' current monthly income by the amounts reasonably necessary to be expended as determined by § 707(b)(2)(A) and (B).

The difference between the debtors' and the trustee's disposable income amounts is explained by the different ways in which they treat the deductions from current monthly income of expenses related to the debtors' three automobiles. In arriving at negative disposable income of -$312.03, the debtors reduced their current monthly income of $7,824.17 by $489 as the local allowance for vehicle ownership of their 1998 Nissan Frontier, $489 as the local allowance for vehicle ownership

2

of their 1999 Ford Explorer, and $558.06 as the amount of their average monthly payment on the secured claim that is secured by their 2006 Ford F250 truck. The trustee agrees that the debtors are entitled to a local allowance for vehicle ownership of two vehicles, but maintains that the local vehicle allowance should be reduced by the amount of the average monthly payment on the Ford F250 truck.

Disposable income for purposes of §1325(b) for debtors with current monthly income greater than that established by § 1325(b)(3) is determined essentially by the chapter 7 means testing formula. Current monthly income is the starting point from which expenses are deducted as provided in § 707(b)(2)(A) and (B). Sections 707(b)(2)(A)(i) and 707(b)(2)(A)(ii)(I) provide that the debtor's monthly expense amounts shall be determined by National Standards and Local Standards issued by the Internal Revenue Service. Under the Local Standards, North Carolina debtors may deduct a monthly expense allowance for vehicle ownership of $489, and may make deductions for up to two automobiles. Under § 707(b)(2)(A)(i) and § 707(b)(2)(A)(iii)(I), debtors may deduct as an expense the average monthly payments "contractually due to secured creditors."

To facilitate the computation of disposable income, Official Form 22C itemizes potential expenses that may be deducted from current monthly income. The vehicle ownership expense allowance is listed on lines 28 and 29 of Official Form 22C, and the average monthly payment on a secured claim, including a claim secured by a vehicle, is listed on line 47. To ensure that a debtor does not receive an expense deduction for both the ownership allowance for a vehicle and an expense deduction for a payment for a secured claim secured by the same vehicle, Official Form 22C requires that the secured payment amount on line 47 be subtracted from the expense allowance for the same vehicle listed on either line 28 or line 29.

3

In this case, the vehicles listed on lines 28 and 29 were unencumbered and there was no secured claim payment to deduct. The debtors also claimed the secured payment of $558.06 for the Ford F250 truck as an expense, which they listed on Official Form 22C line 47.

The trustee contends that if the debtors had taken the vehicle ownership allowance in the Ford F250 truck, the amount of the secured claim would have been subtracted from the allowance, and the debtors would have had disposable income that would have to be paid to unsecured creditors. That is true, but nothing in § 1325(b), § 707(b)(2), or the standards adopted by the Internal Revenue Service preclude debtors who own three vehicles from claiming the local vehicle allowance for two unencumbered vehicles and also claiming the secured payment expense deduction for the third. The court agrees with the debtors that they were not required to list their expenses in a way that maximizes their disposable income. See In re Carlton, 362 B.R. 402 (Bankr. C.D. Ill. 2007). The debtors have no disposable income and have met the requirement of § 1325(b).

The trustee's final contention is that the debtors' plan was not proposed in good faith as required by § 1325(a)(3). According to the trustee, lack of good faith is supported by the debtors' manipulation of expenses on Official Form 22C. However, as already discussed, the debtors were not limited in how they treated their vehicle expenses for purposes of calculating disposable income, and the fact that they did not configure their vehicle expenses on Official Form 22C to benefit unsecured creditors is not an indicator of bad faith.

The trustee also maintains that the debtors' monthly expenses as reflected in their Schedule J are excessive. Specifically, the monthly expenses questioned by the trustee include $578 for retirement savings, $221 for repayment of a loan from a 401(k) account, $720 for transportation expenses, and $201 for the use of cell phones. The court does not find these expenses to be

4

unreasonable for a family of five that includes children ages 9, 14, and 16. The debtors do have three vehicles, but one, the Ford F250 truck, is used for business purposes, and all three are needed.

In determining whether a plan has been proposed in good faith, the court applies a totality of the circumstances test. See Neufeld v. Freeman, 794 F.2d 149, 152 (4th Cir. 1986); Deans v. O'Donnell, 692 F.2d 968, 972 (4th Cir. 1982). There are no factors in this case that support a finding that the plan was not proposed in good faith.

Based on the foregoing, the trustee's motion to dismiss is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**